UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NO. 06-61491-CIV-MARRA/JOHNSON

GAYLE SPRY,

    Plaintiff,

v.

CWA LOCAL 3104,

    Defendant.
_____/

**OPINION AND ORDER**

THIS CAUSE is before the Court on Defendant Communications Workers of America Local 3104's Motion for Summary Judgment (DE 19), filed January 25, 2008.[1]  The motion is now fully briefed and is ripe for review.  The Court has carefully considered the motion and is otherwise fully advised in the premises.

**Background**

On September 29, 2006, Plaintiff Gayle Spry ("Plaintiff") filed her Complaint (DE 1), alleging that Defendant Communications Workers of America Local 3104 ("Local 3104" or "Defendant") and former Defendant Communications Workers of America breached their duty of fair representation to Plaintiff "because the defendants have retaliated against her for her non-union status."  (Compl. ¶ 13.)  Plaintiff claims that Local 3104 violated § 8 of the National Labor

---

[1] The motion was originally brought on behalf of both Communications Workers of America Local 3104 and Communications Workers of America.  However, on February 27, 2008, the parties filed a Joint Stipulation of Dismissal as to Communications Workers of America (DE 27).  Thus, the Court only considers this motion as it relates to Communications Workers of America Local 3104.

Relations Act ("NLRA"), 29 U.S.C. § 158.

The facts, as gleaned from the Complaint, depositions, and affidavits, are as follows: Plaintiff has been employed by BellSouth for over thirty years. (Compl. ¶ 6; Spry Dep. 10-12.) Plaintiff is currently employed by BellSouth (now AT&T) as an "office assistant." (Spry Dep. 12-15.) Local 3104 is the collective bargaining representative for Plaintiff's "bargaining unit" at BellSouth. (Compl. ¶¶ 4, 6; McCallister Decl. ¶¶ 1, 2.) Local 3104 is a self-governing body with affiliations with the national Communications Workers of America union. (McCallister Decl. ¶ 3.) Plaintiff was suspended by BellSouth in 1999, and Plaintiff joined Local 3104 at that time in order to file a grievance. (Spry Dep. 22.) Plaintiff resigned her Local 3104 membership sometime thereafter. (Spry Dep. 33.)

In 2006, Local 3104 began an "internal organizing campaign" to sign up non-members working at BellSouth. Local 3104 posted the names of employees who were not members and offered a $20 reward to any member who was able to get a non-member to join Local 3104. (Donohue Decl. ¶ 2.) Plaintiff stated that these posters "look very similar to an [sic] Old Western 'WANTED DEAD OR ALIVE' posters." (Spry Decl. ¶ 2.) Plaintiff explained that this created "a hostile work environment for employees" like Plaintiff "who do not want to join the Union." (*Id.*) As part of the organizing campaign, Plaintiff claims that she has been isolated from her coworkers because of "instructions not to converse with [her] by Local 3104, and thus every day [she] show[s] up at work [she] feel[s] completely isolated and ostracized." (Spry Decl. ¶ 3.) Plaintiff further complained of "constant" harassment, such as being called a "scab" and being "yelled at repeatedly by shop stewards Jeannie Scott and Loretta Isafano and by Jimmy Donahue." (Spry Decl. ¶ 5.) Plaintiff also stated that her job responsibilities were "deliberately

changed" by BellSouth, which she "believes" to have been caused "directly by pressure brought by [Local 3104]." (Spry. Decl. ¶ 4.) However, Plaintiff also stated at her deposition that she did not know why BellSouth changed her job duties. (Spry Dep. 83-86.)

Plaintiff filed a complaint before the National Labor Relations Board ("NLRB") in April 2006, claiming unfair labor practices in violation of §§ 7 and 8 of the NLRA. Plaintiff stated that she was informed by the NLRB that her complaint was going to be dismissed, so she voluntarily withdrew the charges against Local 3104. (Spry Dep. 87-88.)

Local 3104 now moves for summary judgment. Local 3104 first argues that Plaintiff's claim is not one for a breach of the duty of fair representation – instead, it is merely a charge of unfair labor practices labeled as a breach of the duty of fair representation. As such, Local 3104 argues that the Court does not have subject matter jurisdiction over this case under the Supreme Court's holding in *San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236 (1959). Further, Local 3104 argues that the activities of its members in the "internal organizing campaign" were entirely permissible under the NLRA. Finally, Local 3104 argues that Plaintiff has not demonstrated any connection between the union and her changed job responsibilities. Plaintiff's response to Defendant's motion consists mainly of arguments as to why she was subjected to a "hostile work environment" along with citations to employment discrimination cases brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*.

**Standard of Review**

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323(1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not

suffice; there must be a sufficient showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249-50.

**Discussion**

It is well established that a union owes a duty of fair representation to all employees in a bargaining unit, regardless of whether those employees are union members. *See, e.g., Branch 600, National Association of Letter Carriers v. NLRB*, 595 F.2d 808, 811-12 (D.C. Cir. 1979) ("The union has responsibility as executive bargaining agent to formulate the employees' position on terms and conditions of employment. This responsibility may be delegated by the union membership. . . . However, the delegatee, once selected, must in turn function as a representative for all the employees in the bargaining unit."). This duty obligates the union to represent all bargaining unit employees fairly in both collective bargaining negotiations with the employer and enforcement of the collective bargaining agreement. *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). In executing this obligation, the union must "serve the interests of all members [of the bargaining unit] without hostility or discrimination toward any, [] exercise its discretion with complete good faith and honesty, and [] avoid arbitrary conduct." *Id*.

Equally well-established is the rule that federal courts do not have subject matter jurisdiction over cases which constitute "unfair labor practices" in violation of § 8 of the National Labor Relations Act, 29 U.S.C. § 158. In *San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon*, the Supreme Court held that when "an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the

exclusive competence of the National Labor Relations Board." 359 U.S. 236, 245 (1959). In other words, the National Labor Relations Act strips federal courts of jurisdiction for suits disputing labor practices under § 8 of the Act. *Vaca*, 386 U.S. at 179.

While it is recognized that only the NLRB has subject matter jurisdiction over claims that constitute unfair labor practices in violation of § 8 of the NLRA, a plaintiff can assert a claim that a union has violated its duty of fair representation in negotiating or enforcing the collective bargaining agreement because it engaged in conduct that violated § 8. In *Communications Workers of America v. Beck*, the Supreme Court held that federal courts have jurisdiction to resolve unfair labor practice questions that are "collateral issues" in fair representation claims. 487 U.S. 735, 743 (1988). The Court warned that employees "may not circumvent the primary jurisdiction of the NLRB simply by casting statutory claims as violations of the union's duty of fair representation." *Id.*

The Supreme Court further refined the distinction between a pure unfair labor practice claim and a fair representation claim with collateral unfair labor practice issues in *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33 (1998). In that case, the Court held that

> [w]hen a plaintiff's only claim is that the union violated the NLRA, the plaintiff cannot avoid the jurisdiction of the NLRB by characterizing this alleged statutory violation as a breach of the duty of fair representation. To invoke federal jurisdiction when the claim is based in part on a violation of the NLRA, there must be something *more* than just a claim that the union violated the statute. The plaintiff must adduce facts suggesting that the union's violation of the statute was arbitrary, discriminatory, or in bad faith.
>
> This does not mean that federal courts cannot resolve statutory issues under the NLRA in the first instance. Although federal district courts cannot resolve purely statutory claims under the NLRA, they can resolve statutory issues to the extent that the resolution of these issues is necessary

for a decision on the plaintiff's duty of fair representation claim. *Marquez*, 525 U.S. at 49-50. Essentially, *Marquez* gives the Court the power to hear claims regarding the violation of § 8 "for the limited purpose of determining whether the [union's] failure to pursue [the plaintiff's] section 8 claims before the NLRB constitutes a breach of the [union's] duty of fair representation." *Bean v. United Rubber, Cork, Linoleum and Plastic Workers of America, AFL-CIO, CLC*, 861 F. Supp. 1554, 1561 (N.D. Ala. 1994). The Court does not, however, have jurisdiction to decide the *merits* of any claims grounded directly in § 8, unless those claims also implicate arbitrary, bad faith, or discriminatory actions by the union in failing to negotiate or enforce a collective bargaining agreement.

In this case, Plaintiff claims that she has been isolated by her coworkers and "continuously harassed due to her non-union status." (Compl. ¶ 7, 9.) She claims that the result is that she has been subjected to a "hostile work environment." (*Id.*) Further, Plaintiff claims that her "job responsibilities have been deliberately changed" by BellSouth at the request of Local 3104. (Compl. ¶ 10; Spry Decl. ¶ 4.) Plaintiff does not claim that she sought Local 3104's intervention to remedy the hostile work environment, nor does Plaintiff claim that she sought Local 3104's assistance with respect to her changed job duties. In fact, while Plaintiff stated that she believes her job duties were changed at the request of Local 3104, Plaintiff admits that she does not actually know why her job duties were changed or who made the decision. (Spry Dep. 83-86.)

Plaintiff can only raise a claim against Local 3104 for violation of the duty of fair representation for activities it took (or failed to take) on Plaintiff's behalf when interacting with BellSouth. The only claim that Plaintiff makes that relates to actions taken by Local 3104

7

relative to BellSouth is that Local 3104 pressured BellSouth to change Plaintiff's job duties. Yet, to reiterate, Plaintiff also stated that she did not know why BellSouth changed her job duties and whether the change was motivated by Local 3104's actions. Thus, even taking all of the evidence in the light most favorable to Plaintiff, the Court concludes as a matter of law that no triable issue of fact exists as to whether Local 3104 encouraged BellSouth to take actions adverse to Plaintiff.

As for the remainder of Plaintiff's allegations, these allegations cannot support a claim for breach of a duty of fair representation. Plaintiff's feeling of isolation and her belief that she is being subject to a "hostile work environment" do not relate to the negotiation or enforcement of any collective bargaining arrangement between Local 3104 and BellSouth. Plaintiff fails to allege any connection to the labor agreement between Local 3104 and BellSouth, nor does Plaintiff provide evidence to suggest that her feelings of isolation are in any way connected to the labor agreement. In fact, it appears that Plaintiff did not attempt to use any established grievance process to address her concerns. (*See* McCallister Decl. ¶ 4 ("Until the time of her deposition in this case I had never met Gayle Spry. I was not aware of her union membership status nor any of her complaints until she filed her unfair labor practice charge with the NLRB in 2006.").) Thus, Plaintiffs claims cannot be framed as violations of the duty of fair representation.[2] If these

---

[2] Even if these activities could form the basis of a claim for breach of the duty of fair representation, the Court would still conclude as a matter of law that the duty was not breached, because Plaintiff has not demonstrated that any of Local 3104's actions were arbitrary, discriminatory, or taken in bad faith. *Bean*, 861 F. Supp. at 1561 n.3 ("To prove that the Union breached its duty of fair representation, plaintiffs must prove that their section 8 claims were colorable, but they must also prove that the Union's failure to pursue those claims was arbitrary and in bad faith."). Posting a list of non-members, labeling non-members as "scabs," and encouraging members to get non-members to join are all permissible activities, with the only caveat being that unions may not publish false information knowingly with the intent to injure non-members. *Old Dominion Branch No. 496, National Association of Letter Carriers v. Austin*, 418 U.S. 264, 277 (1974) ("Vigorous exercise of this right 'to persuade other employees to join'

alleged actions constitute a cause of action, it could only be as an unfair labor practice in violation of § 8(b)(1) of the NLRA, 29 U.S.C. § 158(b)(1).  Under the *Garmon* rule, because this claim is "arguably" a claim of a violation of § 8 of the NLRA, this Court does not have subject matter jurisdiction to adjudicate Plaintiff's claim.  Accordingly, Defendant's motion for summary judgment must be granted.

**Conclusion**

It is hereby **ORDERED AND ADJUDGED** that Defendant CWA Local 3104's Motion for Summary Judgment (DE 19) is **GRANTED** as follows:

1.  As a matter of law, Defendant CWA Local 3104 did not violate its duty of fair representation to Plaintiff in negotiating or enforcing the labor agreement between BellSouth and Plaintiff's bargaining unit.

2.  As a matter of law, the Court does not have subject matter jurisdiction to adjudicate Plaintiff's claims that Local 3104 violated § 8 of the NLRA, 29 U.S.C. §158(b).

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 19th day of March, 2008.

Copies furnished to:  
all counsel of record

KENNETH A. MARRA  
United States District Judge

---

must not be stifled by the threat of liability for the overenthusiastic use of rhetoric or the innocent mistake of fact."); *Linn v. United Plant Guard Workers of America, Local 114*, 383 U.S. 53, 60-61 (1966) ("[T]he Board has concluded that epithets such as 'scab,' 'unfair,' and 'liar' are commonplace in these struggles and not so indefensible as to remove them from the protection of § 7, even though the statements are erroneous and defame one of the parties to the dispute."). Thus, the fact that Plaintiff's name was posted on a "scab list" cannot, as a matter of law, be arbitrary, discriminatory, or in bad faith.  The fact that individual union members have elected to put pressure on Plaintiff to join Local 3104 does not mean that Local 3104 has acted outside of the bounds of rationality so as to be labeled "arbitrary" or "bad faith."